UNITED STATES OF AMERICA DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION AT MEMPHIS

*Donella D.* (pseudonym),

Vs

DEPARTMENT OF THE TREASURY, IRS
Steven T. Mnuchen, Secretary, Agency.
AND any currently unknown but future-known
insurance provider

DOCKET NUMBER:
2:19-cv-02384-TLP-dkv

DATE: January 6, 2020

## PLAINTIFF'S AMENDED COMPLAINT WITH CASE MERGER AND JOINT PARTIES

TO THE HONORABLE CHANCELLORS AND/OR MAGISTRATES OF THE UNITED STATES OF AMERICA DISTRICT COURT IN TENNESSEE FOR THE WESTERN DISTRICT AT MEMPHIS

### I.   JURISDICTION AND PARTIES

1. This suit is brought and jurisdiction pursuant to section 107 (a) of the Americans with Disabilities Act (hereafter "ADA"), 42 U.S.C. 12117, which incorporates by reference 706 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-5.

2. All conditions precedent to jurisdiction under the Equal Employment Opportunities Commission has been complied with as it pertains to newly joined IRS Case # 18-0410-F and the currently held federal case: 2:19-cv-02384-TLP-dkv.

3. Jurisdiction is specifically conferred upon this United States District Court by the aforementioned statutes, as well as 28 U.S.C. 1331. Jurisdiction may also be appropriate under 42 U.S.C. 1981, 1983, and 1985 (3), as amended by the Civil Rights Act of 1991, Pub. L. No. 102 – 166, and any related claims under Tennessee law.

4. All conditions precedent to jurisdiction under the Equal Employment Opportunities Commission has been complied with.

5. A charge against the Department of the Treasury was filed with the Equal Employment Opportunities Commission division for the Office of Federal Operations' and Plaintiff is filing this claim within a 90 day timeframe allotted.

*All exhibits stated are contained within Plaintiff's Response to Defendant's Answer provided to the Court 4 Sept 2019. All exhibits are applicable to this motion as well: PLAINTIFF'S RESPONSE TO DEFENDANT'S ANSWER REGARDING PLAINTIFF'S AMENDED COMPLAINT*

6. A notification of a right to file was issued to Plaintiff 15 March 2019.

7. Plaintiff filed with the United States District Court Western District of Tennessee 11 June 2019.

8. Plaintiff, Teresa Young, is a citizen of the United States and the state of Tennessee who resides in Memphis, TN.

9. All the discriminatory employment practices herein were committed within the state of Tennessee.

10. The Defendant, Department of the Treasury, (hereinafter "Agency") is a federal entity of the United States' government with offices in Memphis, Tennessee, regional office in Atlanta, Georgia and principal place of business in Washington, D.C.

11. The Agency is a *Federal agency* as defined in 5 U.S.C. 105.

12. The Agency is a "person" within the meaning of 101(7) of ADA, 42 U.S.C. 12111(7), and 701 of Title VII of the Civil Rights Act of 1964., 42 U.S.C. 2000e **and the Rehabilitation Act of 1973, 29 U.S. C. 701,** *et seq.*

13. The Agency is engaged in an industry that affects individual and business taxation within the meaning of Section 101(7) of the ADA, 42 U.S.C. 12111(7), and Section 701 of the Civil Rights Act of 1964, 42 U.S. C. 2000e. 12111(7), and Section 702 of the Civil Rights act of 1964., 42 U.S.C. 2000e, **and the Rehabilitation Act of 1973, 29 U.S. C. 701,** *et seq.*

14. The Agency employs over 25,000 or more employees and is an "employer" within the meaning of Section 101(5)(A) of the ADA, 42 U.S.C. **and the Rehabilitation Act of 1973, 29 U.S. C. 701,** *et seq.*

15. The Agency may, in the future, divulge any and all insurance companies that can assist in case settlement and at that time, this future-revealed company shall become a co-defendant.

## II.    STATEMENT OF THE FACTS

16. Plaintiff is a military veteran with disabilities who was hired in December 2016 under a VRA/VEOA federal announcement but due to a change in presidential administrations, began work on 20 March 2017 as an Office Automation Clerk for the Department of the Treasury (hereafter referred to as "Agency").

Docket Number:   2:19-cv-02384-TLP-dkv                                    Page **2** of **12**
*All exhibits stated are contained within Plaintiff's Response to Defendant's Answer provided to the Court
4 Sept 2019. All exhibits are applicable to this motion as well: PLAINTIFF'S RESPONSE TO
DEFENDANT'S ANSWER REGARDING PLAINTIFF'S AMENDED COMPLAINT*

17. On or about August 2017, Mary Yarbrough, a temporarily-assigned department manager, attempted to force Plaintiff to sit in a smoker's cubicle.

18. Plaintiff notified Yarbrough of the need for accommodations due to her disabilities which included asthma, chronic sinusitis, bronchitis, and allergies.

19. Plaintiff completed the Agency's Reasonable Accommodations' sheet with accompanying doctor confirmations.

20. **Plaintiff** filed an internal EO claim in August 2017.

21. Plaintiff was informed by EO counselor, Karen King that she could remain in the cubicle that she had been sitting in for which the Operations' manager, Reginald Carr, agreed.

22. Agency forced a furlough upon the Plaintiff 29 September 2017 to 1 January 2018.

23. Plaintiff was forced to return to work in an unpaid work status to attend an EO hearing that was prolonged due to management's non-response in November 2017.

24. **Plaintiff** returned to work on 2 January 2018 from furlough.

25. **Plaintiff** was immediately retaliated against upon her return for participation in a protected activity, EO.

26. Plaintiff has a stress disorder. It is notated on Exhibit D3 and several correspondences to management. Yet, the Plaintiff was harassed by management instead of being accommodated. The Plaintiff was forced into stressful situations and environments to aggravate a known medical condition;*it is illegal to terminate the Plaintiff for a known medical disorder that went unaccommodated.*

27. *The Plaintiff sent* many requests via email for reassignment to the night and/or swing shift to accommodate multiple disabilities. There were multiple openings on these shifts that were contained in the Plaintiff's requests. In addition, on the night shift the cubicle that the Plaintiff sat in prior to being moved to an unaccommodated location with the non-working computer, locked cabinets, one-armed chair, etc.  These were rejected by Reginald Carr: This is discrimination due to that disability, needing to go to the doctor. Please see **Exhibit D18**. The Plaintiff followed up her reassignment requests with an EO form for reassignment since it appeared that the departmental leadership did not want to accommodate me with **Exhibit D19**. / Please note that whenthe Plaintiff  began working at the IRS, a female by the name of Keyana Jones transferred from Atlanta to Memphis after she got into a fight in Atlanta after only working there 1 month. She was in a probationary status. She acquired one of the 5 slots for clerk that was to go to veterans. Jones was not a veteran. In August 2017, Reginald Carr, approved to have her to reassigned back to Atlanta because she said that she did not like the Memphis location and things had cooled down in Atlanta. However, the Plaintiff was discriminated against

*All exhibits stated are contained within Plaintiff's Response to Defendant's Answer provided to the Court 4 Sept 2019. All exhibits are applicable to this motion as well: PLAINTIFF'S RESPONSE TO DEFENDANT'S ANSWER REGARDING PLAINTIFF'S AMENDED COMPLAINT*

by Reginald Carr. He could have transferred the Plaintiff but chose to support the harassment of the Plaintiff by his departmental and team management because he had intentions to terminate the Plaintiff no matter what happened.

28. The Plaintiff sent numerous emails, faxes, buckslips, as well as an official internal reassignment form to Mr. Carr. He refused to provide any reason to the Plaintiff as to the reason why she could not be on the night shift. Mr. Carr has 3 departments on the night shift that **includes over 15 teams.** For every two teams, there are are 2 clerks assigned. Therefore, he had this choice as well as the option of transferring the Plaintiff to the night shift by transferring her to Operations 1 where 2 veterans in the position of clerk had resigned. In addition, Patrice Smith, night clerk under Carr was willing to change shifts with the Plaintiff as she wanted to be on the day shift. Carr refused all options as well as refused to accommodate the Plaintiff's veteran status and disability because he accommodated all disabilities just not those from veterans. The Plaintiff's appointments were VA (veteran admin) appts which were associated /her veteran disabilities which she has a 10 point veteran preference. Plaintiff filed an NTEU grievance due to Carr's demands that she TRAIN all clerks. The Union made/forced Carr to stop his demands unless Plaintiff was promoted to Trainer. At a result of Plaintiff's protected action, Carr kept retaliating.

29. **The Defense knowingly deceived or willfully obstructed the Plaintiff from competing for employment: I applied for multiple job opportunities for which the Plaintiff was well-qualified including** 18cs5-hcx0060-9203-5-7-cd, 18cs5-hcx0060-0203-5-7-cd Human Resource Assistant (recruitment and placement) IRS, 18CE2-HCB0198-0203-4T7-MP Human Resources Assistant (Information Systems) IRS, and 18CE2-VRB0194-0000-00-MS, Voluntary Relocation Program. Before being terminated, I was deemed qualified to obtain one of these positions but management did not want to see me advance.

30. Plaintiff was harassed to sit in the smoker's cubicle by seasonal team-manager, Alicia Seawood and first-time departmental manager, Mary Yarbrough to knowingly aggravate the Plaintiff's respiratory and breathing conditions for which management was well-aware of. As defined in Section 3(2) of the Americans with Disabilities Act ("ADA"), 42 U.S.C. 12102 **and the Rehabilitation Act of 1973, 29 U. S. C. 701,** *et seq*. Plaintiff has

a.) a physical and mental impairments that substantially limits one or more major life activities [which are defined as in 2A: **(2) Major life activities** *"For purposes of paragraph (1), major life activities include, but are not limited to, caring for oneself, performing manual tasks, speaking,*

**breathing,** *learning, reading,* **concentrating, thinking, communicating, and working."]*

31. Plaintiff filed another EO claim and internal EDI/harassment reports which included sexual harassment.

32. Plaintiff given a write-up January 2018 by Mary Yarbrough and Alicia Seawood regarding a reasonable accommodation in violation of CRR§ 29 1614.702 (k) creating harm which is deemed as a reprimand as well as setting forth conditions of employment due to this illegal act which included termination on 12 March 2018.

**33.** The American with Disabilities' Act (hereafter "ADA") and the Equal Opportunity (hereafter "EO") makes it illegal to harm Plaintiff through its Terms and Conditions of Employment which states

> *"Employers may not discriminate when it comes to such things as hiring, firing, promotions, and pay. It also means that an employer may not discriminate when...assigning work stations, or setting any other terms or conditions of employment- however small. Harm is also receiving reprimands, suspensions, or termination as a result of discriminatory action."*

34. Plaintiff was forced to sit in another cubicle by Yarbrough and Seawood which was purposely set aside for her in a non-work-ready state.

35. Plaintiff made several requests to make cubicle work-ready and to accommodate her disabilities.

36. Plaintiff included the lack of any accommodations at the assigned accommodations into her EO claim along with sexual harassment/marital status from a manager within the department.

37. Plaintiff had an internal mediation which was brought to a close on 6 March 2018.

*38.* On 6 March 2018, seasonal team manager; Alicia Seawood retaliated against Plaintiff for EO participation, by demanding that Plaintiff provide her with her badge number.

*39.* 7 March 2018, management demanded that she clean out her former cubicle.

*40.* 8-9 March 2018 Plaintiff was progressive asked for more information.

**41.** 10-11 March 2018 was a weekend and on 12 March 2018, Plaintiff returned to work and was terminated where she was asked by Mary Yarbrough, acting manager, for her badge.

*42.* As stated on letter of termination, Plaintiff was terminated due to two write-ups.

*43.* One write-up of January 2018 pertained to reasonable accommodations: It is illegal to terminate anyone due to reasonable accommodations as well as to retaliate against an employee.

44. One write-up of 22 February 2018 pertained to filing for a manager who refused to respond to any of Appellant's copious emailed requests for filing. This manager, Sirina Wilkins, informed Plaintiff that she no filing which was confirmed via email. Plaintiff

was retaliated against by Mary Yarbrough for this second write-up as a response to an earlier email sent that day by Plaintiff to Yarbrough and her supervisor, Reginald Carr, requesting update on state of requested items for the non-work ready cubicle.

**45.** It is illegal to terminate anyone due to reasonable accommodations as well as to retaliate against an employee for asking for updates and/or or requesting accommodations which was done by Plaintiff.

*46.* Tennessee Department of Labor and Workforce Development in its March 2018 decision concluded that Appellant's termination was the result of requests for reasonable accommodations that went unfulfilled and retaliation for applicant filing EO complaints against regarding the latter and other complaints.

### III.   CLAIM FOR RELIEF

**47.** Plaintiff is an individual with a "disability" as defined in Section 3(2) of the Americans with Disabilities Act ("ADA"), 42 U.S.C. 12102 **and the Rehabilitation Act of 1973, 29 U.S. C. 701,** *et seq*. Plaintiff has

a.) a physical and mental impairments that substantially limits one or more major life activities [which are defined as in 2A: **(2) Major life activities** *"For purposes of paragraph (1), major life activities include, but are not limited to, caring for oneself, performing manual tasks, speaking, **breathing,** learning, reading, **concentrating, thinking, communicating, and working.**"]*
b.) a record of such an impairment; and

c.) is regarded by the Agency as having such impairments [which states in paragraph (3a... *"An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.)]"*

**48.** The Merit Systems' Protections Board sets forth that probationary employees possess the same rights as an applicant that includes protections against discrimination due to disability and participation in protected activities which includes EO, including retaliation for such participation.

**49.** Plaintiff is a qualified individual with a disability within the meaning of Section 101(8) of the ADA, 42 USC. 12111(8) **and the Rehabilitation Act of 1973, 29 U.S. C. 701,** *et seq.* in that the Plaintiff is an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the job as an Office Automation Clerk.

*50.* As per the Office of Disability in Employment, **"**To fully participate in the workforce, applicants and employees with disabilities must have access to and use of information and data that is comparable to the access and use by applicants and employees without disabilities," Plaintiff should have received comparable working technology that her peers utilized.

51. Title VII makes it an unlawful employment practice for a person covered by the Act to discriminate against an individual "because she has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Plaintiff was retaliated against for reporting retaliatory events against her through several protected channels including internal complaint hotlines which resulted in inter alia constant harassment, insufficient technology, verbal harassment, and termination.

52. 5 U.S.C. §2302(b)(1)-(b)(13) makes it illegal and a prohibited personnel practice to take a personnel action against an employee because of whistleblowing.

**53.** 5 C.F.R. § 315.803(b) states that when an agency proposes to terminate an employee serving a probationary or trial period for reasons based in whole or in part on conditions arising before his appointment, the employee is entitled to the following:(a) *Notice of proposed adverse action.[and]* (b) *Employee's answer.* The employee is entitled to a reasonable time for filing a written answer to the notice of proposed adverse action and for furnishing affidavits in support of his answer. Employee was not provided with an advance written notice stating the reasons and the opportunity to provide a written answer to the notice of adverse action.

54. 5 CFR § 315.804 discusses unsatisfactory performance or conduct. Within the Agency performance is measured in the form of evaluations. Plaintiff **never** received her annual evaluation which was due in January 2018 and/or any evaluation, as well as any training from the management team of the department that she was assigned to at time of termination.

55. Plaintiff was a Bargaining Agreement employee and signed a bargaining agreement contract with the Agency guaranteeing Plaintiff permanent seasonal employment from January to August 2018.

56. Agency is in breach of contract through the termination action of 12 March 2018.

57. Under Article 12, Section 4 of the Agency's bargaining agreement it states that "the ending date for an employee's annual rating period shall be based the month determined by the last digit of the employee's social security number." Due to this bargaining agreement statute, Plaintiff was to provide with an annual evaluation in January 2018 but

she was not. If there were any performance issues it was to be documented on it but management failed to provide Plaintiff with this evaluation.

58. Under Article 12 Section 3 of the Agency's bargaining agreement and pursuant to 5 U.S.C. §§ 9508 and 4302 job performance is to be documented on the annual evaluation that Plaintiff never received from management and Plaintiff must be provided with a Critical Job Evaluation checklist from the management of the exact department that he or she works for that informs Plaintiff of the duties that she is to perform. Operations 2, Department 2 of the Accounts Management team of the Agency located at Memphis, TN **never** provided Plaintiff with a Critical Job Evaluation checklist. Therefore, any and all conduct and/or performance issues were the result of management's improper procedures.

59. 5 CFR § 315.806 probationary employees have the same rights as an applicant which includes protections from discrimination due to disability, reasonable accommodations for known disabilities, as well as participation in a protected activity including EO as the Agency is an EO/AA employer and the Agency is a "person" within the meaning of 101(7) of ADA, 42 U.S.C. 12111(7), and 701 of Title VII of the Civil Rights Act of 1964., 42 U.S.C. 2000e.

60. Plaintiff filed internal EO claims which included sexual harassment, disability, and reasonable accommodations.

61. On Plaintiff's termination letter, Plaintiff is terminated due to reasonable accommodations that she protested through internal EO filings in which Plaintiff was purposely assigned to a non-work ready cubicle by a department manager that had over four months to make work-ready and who was in violation of PPP (prohibited personnel practice: 5 C.F.R. §335.103( c )1)(i)) that impaired Appellant's ability to do her job.

62. Plaintiff wore a carpal tunnel brace on her left hand and forearm each day to work. The sight of this device provided a visual perceived disability. She was limited and/or slowed in certain functions. In Section 3 (2) of the Americans with Disabilities Act ("ADA"), 42 U.S.C. 12102 in paragraph (3a… *"An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or* **perceived** *physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.)]"* Plaintiff cannot thus be discriminated against for her disability.

63. Plaintiff cannot be terminated due to the failures of management.

64. The actions of two management personnel (Mary Yarbrough and Alicia Seawood) were the basis for termination and disability discrimination against the Complainant. However, both management personnel were illegally in a position of management because in federal government no one can obtain multiple details/temporary assignments in one year without returning to their original position for one year after which, a second detail can

be obtained: 5 C.F.R. 335.103 violation. Any and all write-ups that Plaintiff received from these two personnel as well as any and all influence to terminate Plaintiff is to be dismissed due to lack of authority.

65. Plaintiff was allegedly terminated for the lack of filing of a team manager, Sirina Wilkins. Sirina Wilkins **never** informed Plaintiff of any filing verbally or in writing. Plaintiff has dutifully proven that Plaintiff sent several emails to her as well as walked to her office regarding filing. However, on 21 February 2018, Plaintiff spoke with Wilkins and Wilkins confirmed that there was no filing to be done which was confirmed via email.

66. On 22 February 2018 after Plaintiff asked yet again for keys to the cubicle cabinets of the non-work-ready cubicle which was assigned to her as a reasonable accommodations by Mary Yarbrough-acting department manager who was in violation of 5 C.F.R. §335.103( c )1)(i)), she chose to retaliate against Plaintiff by writing her up for non-completion of filing of Sirina Wilkins. Yarbrough stated that Plaintiff failed to get with Wilkins regarding filing. However, Plaintiff has proven through several emails (Exhibits D7, D7A, and D7B) that **pre-date** the write-up that Plaintiff attempted to get with Wilkins of several occasions which culminated in Wilkins informing her that there was no filing to be done.

67. 5 U.S.C. §2302(b)(1)-(b)(13) makes it illegal and a prohibited personnel practice to take a personnel action against any employee because of the exercise of an appeal, complaint, or grievance right.

68. On March 6, 2018, internal EO counselor, Aurora Lara, distributed notification of the closure of mediation to Plaintiff's internal complaint.

69. On March 6, 2018, seasonal assigned team manager, asked Plaintiff to provide her badge number to her and on each day thereafter, more information was asked of Plaintiff to supply to management.

70. Four business day/work days later, Plaintiff is terminated on12 March 2018. Each reason cited was contained in Plaintiff's internal EO charges. The charge whose mediation closed on 6 March 2018 has now been elevated to the Office of Federal Operations' Equal Opportunity Commission: Docket # 0120181526.

71. Plaintiff is a disabled veteran and needed accommodations that were never provided to her.

72. Plaintiff had to order several accommodations for herself as proven to the Merit Systems Protections Board. Management of the Agency never ordered any item to accommodate Plaintiff.

*All exhibits stated are contained within Plaintiff's <u>Response to Defendant's Answer</u> provided to the Court 4 Sept 2019. All exhibits are applicable to this motion as well: PLAINTIFF'S RESPONSE TO DEFENDANT'S ANSWER REGARDING PLAINTIFF'S AMENDED COMPLAINT*

73. Plaintiff made several internal complaints due to the lack of accommodations and other EO filings which in turn were listed as reasons for her termination on termination letter.

74. 5 U.S.C. §2302(b)(1)-(b)(13) makes it illegal and a prohibited personnel practice to discriminate against an employee on the basis of conduct, which does not adversely affect the performance of the employee, including discrimination based on sexual orientation.

**75.** The Civil Service Reform Act (CSRA), which covers federal agencies, contains several rules designed to promote fairness in federal personnel actions and prohibit discrimination against applicants and employees with disabilities.

76. Under CRR§ 29 1614.702 (k)  "The term *issue of alleged discrimination* means one of the following challenged agency actions affecting a term or condition of employment as listed on EEOC Standard Form 462  Appointment/hire; assignment of duties; awards; conversion to full time; disciplinary action/demotion; **disciplinary action/reprimand**; disciplinary action/suspension; disciplinary action/removal; duty hours; evaluation/appraisal; examination/test; harassment/non-sexual; harassment/sexual; medical examination; pay/overtime; promotion/non-selection; reassignment/denied; reassignment/directed; reasonable accommodation; reinstatement; retirement; termination; terms/conditions of employment; time and attendance; training; and, other.

## IV.    PRAYER FOR RELIEF

Plaintiff respectfully prays the court to grant the following relief:

1. Agency be found as being discriminatory against Plaintiff especially as it pertains to

   CRR§ 29 1614.702 (k).

2. Agency decision to terminate be overturned due to lack of staff authority: 5 C.F. R.

   335.103 violation.

3. Order that Agency be found guilty of EEO MD-110.

4. Order that Plaintiff be returned to work effectively immediately.

5. Order that Plaintiff be awarded back pay, medical benefits, and a restoration of

   retroactive retirement contributions with interest and Agency matches she would have

   earned during March 13, 2018 to the present date.

6. Order that Plaintiff be awarded all financial damages as contained in Financial Ledger registered under seal by the court with additional financial damages assessed due to time transpired to the conclusion of this case.

7. Order that the Plaintiff be transferred to a different department and/or under different team and departmental management upon return to work.

8. Grant such other and further relief as may be just and proper.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff requests that the Court grant her leave to merge cases: IRS 18-0410-F and case of IRS-18-0237F (the case that pertains to this docket # in federal court). As contained in the Plaintiff's initial Complaint and subsequent amendments et al., the Plaintiff stated, *inter alia*, that she sought to have these cases combined and this intent was also expressed within her conclusion of the initial Complaint's filing.

While the Plaintiff does not agree with outcome and/or the EEOC's findings, as of 6 January 2020, the Plaintiff is in receipt of her right to file with reference to # IRS 18-0410-F.

(see **attached Exhibit WHICH IS TO BE ENTERED <u>UNDER SEAL</u> BECAUSE IT CONSTITUTES PRIVLEGED AND/OR PRIVATE INFORMATION WHICH IS A PROTECTED ACTIVITY/EEOC DOCUMENT**). Nonetheless, the Plaintiff requests that the Court grant her leave to receive case merger through which the Plaintiff's complaints and pleadings et al. are amended to reflect a case merger. In addition, the Plaintiff seeks that the Court enter an order granting her <u>all</u> financial relief with additional calculations due to time transpired as set forth in her Ledger of Financial Damages provided to the Court.

Docket Number:  2:19-cv-02384-TLP-dkv                          Page **11** of **12**
*All exhibits stated are contained within Plaintiff's <u>Response to Defendant's Answer</u> provided to the Court 4 Sept 2019. All exhibits are applicable to this motion as well: PLAINTIFF'S RESPONSE TO DEFENDANT'S ANSWER REGARDING PLAINTIFF'S AMENDED COMPLAINT*

Respectfully submitted this 6th day of January 2020.

BY: _____

Donella D. , Plaintiff

# CERTIFICATE OF SERVICE

I, *Donella D.* (psuedonym), Plaintiff, in Docketed Case number   2:19-cv-02384-TLP-dkv certify that

**PLAINTIFF'S AMENDED COMPLAINT WITH CASE MERGER AND JOINT
PARTIES and Request for Court Appointed Counsel** (Both filed in-person at court
on 8 Jan 2020 but only the Counsel
have been filed with the UNITED STATES OF AMERICA DISTRICT COURT request
WESTERN DISTRICT OF TENNESSEE WESTERN DIVISION AT MEMPHIS appears

on
Pacer)

and THUS SERVED ONTO THE FOLLOWING PERSONNEL:

UNITED STATES OF AMERICA DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
Federal Building
**167 North Main Street, 2nd Floor Court Clerk's Office**
Memphis, TN 38103

and

Jason Martin, esq.
and/or Monica Simmons, esq.
Dept. of Justice
167 North Main Suite 800
Memphis, TN 38103

Respectfully submitted this 6th day of January 2019

Donella D., Plaintiff

Docket Number:   2:19-cv-02384-TLP-dkv                                       Page **12** of 12
*All exhibits stated are contained within Plaintiff's Response to Defendant's Answer provided to the Court
4 Sept 2019. All exhibits are applicable to this motion as well: PLAINTIFF'S RESPONSE TO
DEFENDANT'S ANSWER REGARDING PLAINTIFF'S AMENDED COMPLAINT*