IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

TERESA YOUNG,

    Plaintiff,

v.                                    No.  2:19-cv-02384-TLP-dkv

DEPARTMENT OF THE TREASURY;
IRS; AND STEVEN T. MNUCHIN, UNITED
STATES SECRETARY OF THE TREASURY,

    Defendants.

---

REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR PARTIAL
DISMISSAL

---

On June 11, 2019, Teresa Young ("Young") filed her first *pro se* complaint against the Department of Treasury (the "Agency"), the IRS, and Steven T. Mnuchin, Secretary of the Treasury, (collectively the "Defendants"). (Compl., ECF No. 1.) Subsequently, Young filed several amendments to her complaint. (*See* ECF Nos. 17, 25, & 28.) On January 8, 2020, Young filed a final motion to amend her complaint, (Mot. to Am. & Correct Compl., ECF No. 91), which this court granted on January 9, 2020, (Order, ECF No. 96). Young then filed her amended complaint on January 10, 2020 alleging violations of the Americans with Disabilities Act of 1990, as amended by the ADA Amendments Act of 2008 (the

"ADA"),[1] and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, ("Title VII"). (Am. Compl., ECF No. 97.)

Before the court is the Defendants' January 28, 2020 motion for partial dismissal pursuant to 12(b)(6). (Mot. to Dismiss, ECF No. 113.) On March 2, 2020 Young filed a motion to exceed the twenty-page limit set by Local Rule 12.1(b) in her response, (Mot., ECF No. 155), which this court denied on March 3, 2020, (Order, ECF No. 156). Young has since appealed, (Appeal, ECF No. 160), and the appeal is pending before the presiding district judge.[2] Young filed her response on March 10, 2020.[3] (Resp., ECF No. 161.)

_____

[1] *See infra* note 5 and accompanying text.

[2] In her appeal, as well as in other pleadings filed after this court's order denying Young's motion to exceed the twenty-page limit in her response, Young contends that she never received the exhibits attached to the Defendants' motion for partial dismissal. This issue is also pending before the presiding district judge. After review, however, there is no reason to suggest Young could not access these documents. Young agreed to receive notice of electronic filing, (Notice, ECF No. 4), and the exhibits are clearly marked and docketed, labeled as "Exhibit Combined Exhibits 1–16" at ECF No. 113-1. Additionally, none of these exhibits are sealed. Furthermore, Young repeatedly stated in her motion to exceed the page limit in her response, and in the appeal of this court's order, that the Defendants' motion is "well over fifteen pages in length." However, the Defendants' motion and memorandum in support of that motion are only sixteen pages in total. The Defendants' attached exhibits, however, are 155 pages. As such, it appears from Young's own statements that she can view and access the exhibits attached to the Defendants' motion. Accordingly, the court proceeds with this report and recommendation as though Young received the exhibits attached to the Defendants' motion for partial dismissal.

[3] Young filed two separate entries titled "Response": one on March 10, 2020 and one on March 12, 2020. (Resps., ECF Nos. 161

This case has been referred to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate. (Admin. Order 2013-05, Apr. 29, 2013.)

For the following reasons, it is recommended that the Defendants' motion for partial dismissal be granted.

## I.    PROPOSED FINDINGS OF FACT[4]

---

& 162.) After review, the two entries contain the same information. Docket entry number 161 contains a twenty-page memorandum and seventeen pages of exhibits. (Resp., ECF No. 161). Docket entry number 162 contains two copies of the twenty-page memorandum and the seventeen pages of exhibits accompanied by the original envelop. (Resp., ECF No. 162.) Because there is no substantive difference between the two entries, for purposes of this report and recommendation Young's first response will be the operative response. Additionally, although Young's response is twenty pages long, it is clear that she met the twenty-page limit only by using a smaller font in violation of Local Rule 7.1(b). Young is warned, again, that her failure to comply with the Federal Rules of Civil Procedure and the Local Rules of Court, or any other order of the court may result in her case being dismissed without further notice.

[4] Young attempts to incorporate by reference an earlier response, (ECF No. 22), she filed to one of the Defendants' prior answers, (ECF No. 14), to Young's original complaint, (ECF No. 1). (Am. Compl. 1, ECF No. 97.) The response, which is in essence a reply, will not be considered by this court. Per the Federal Rules of Civil Procedure, Young has no automatic right to file a reply to the Defendants' answer to her complaint. Fed. R. Civ. P. 7(a). Nor has the court, or the presiding district judge, ordered her to file a reply. Furthermore, Young did not seek to file a reply to the Defendants' answer. The Defendants' answer did not include a counterclaim and nothing in the answer indicates that a reply from Young was needed. Accordingly, Young's response, which is essentially a reply, will not be considered. To the extent, however, that Young cites to exhibits attached to the response in her amended complaint, the court will include them in its analysis.

Young alleges various instances of employment discrimination in violation of Title VII and the ADA,[5] and it is somewhat difficult to follow the allegations in her amended complaint. Young is a military veteran with disabilities. (Am. Compl. ¶¶ 16, 71, ECF No. 97.) According to Young, she was hired by the Agency in December 2016 pursuant to a Veterans' Recruitment Appointment and/or the Veterans Employment Opportunity Act of 1998. (*Id.*) Young began working as an office automation clerk for the Agency on March 20, 2017. (*Id.*)

Young contends that she is an individual with a disability who, with or without a reasonable accommodation, can perform the essential functions of the job of office automation clerk. (*Id.* ¶ 49.) Young wore a carpal tunnel brace on her left hand/forearm each day to work, which she alleges provided a visual perception of one of her allegedly several disabilities. (*Id.* ¶ 62.) Young states that this limited her and/or slowed her down in certain

---

[5] Although Young states she is bringing her claim pursuant to the ADA, Young also cites to the Rehabilitation Act in various parts of her amended complaint. (Am. Compl., ECF No. 97.) The Rehabilitation Act is the exclusive remedy for disability discrimination for federal employees. *Plautz v. Potter*, 156 F. App'x 812, 816 (6th Cir. 2005). However, the Sixth Circuit has approved of construing a plaintiff's "ADA" claim as a Rehabilitation Act claim because "there is no significant difference between the substantive standards of the ADA and the Rehabilitation Act." *Id.* Accordingly, the court will construe Young's complaint as a complaint for disability discrimination and failure to accommodate under the Rehabilitation Act.

functions. (*Id.*) Additionally, Young alleges she has asthma, chronic sinusitis, bronchitis, and allergies. (*Id.* ¶ 18.)

Young makes numerous allegations against the Agency. Young alleges that in August 2017, Mary Yarbrough ("Yarbrough") and team-manager Alicia Seawood ("Seawood") harassed Young by "forc[ing]" her to sit in a smoker's cubicle. (*Id.* ¶¶ 17,30.) According to Young, it was to "knowingly aggravate" Young's respiratory conditions, which she contends the Agency was aware of. (*Id.* ¶ 30.) Young notified Yarbrough of her need for an accommodation due to the following disabilities: asthma, chronic sinusitis, bronchitis, and allergies. (*Id.* ¶ 18.) Young contends that she completed the Agency's Reasonable Accommodation form and supplied the Agency with accompanying doctor confirmations. (*Id.* ¶ 19.) According to Young, she then filed an internal EO claim in August 2017. (*Id.* ¶ 20.) During counseling, the EO counselor informed Young that she could remain in her original cubicle and her operations manager, Reginald Carr ("Carr"), agreed. (*Id.* ¶ 21.)

Young further contends that the Agency "forced a furlough upon [her]" from September 29, 2017 to January 1, 2018. (*Id.* ¶ 22.) According to Young, she was then "forced to return to work in an unpaid work status to attend an EO hearing that was prolonged due to management's [failure to respond] in November 2017." (*Id.* ¶ 23.) Young returned to work on January 2, 2018. (*Id.* ¶ 24.) Upon her return, Young alleges she was "immediately retaliated

against" for her participation in protected activity. (*Id.* at ¶ 25.) Specifically, Young alleges she has a stress disorder which was known to management and she sought accommodation. (*Id.* at ¶ 26.) Young states that she was harassed by management instead of being accommodated. (*Id.*) Young contends that despite her several accommodation requests, the Agency never ordered any item to accommodate her. (*Id.* ¶ 72.) Young further states that she "was forced into stressful situations and environments to aggravate [her known] medical condition [and] it is illegal to terminate [her] for a known medical disorder that went unaccommodated." (*Id.*)

Young also contends that she sent several requests via email for a reassignment to the night and/or swing shift to accommodate "multiple disabilities." (*Id.* ¶¶ 27, 28.) Young alleges that there were several openings for the night and/or swing shifts. (*Id.* ¶ 28.) Young contends that Carr refused to provide any reason to her as to why she could not be on the night shift. (*Id.*) Additionally, Young argues that Patrice Smith, a night clerk under Carr's management, was willing to switch shifts with her, but Carr refused. (*Id.*)

Young also refers to a Keyana Jones ("Jones"). According to Young, at the time she began working at the Agency, Jones, a female employee, transferred from the Atlanta office after getting into a fight. (*Id.* at ¶ 27.) Young states that although Jones was on

6

probationary status with the Agency, she was assigned to one of the five clerk positions reserved for a veteran. (*Id.*) Young contends that Jones was not a veteran. (*Id.*) Carr eventually transferred Jones back to the Atlanta office upon her request. (*Id.*) Young argues that Carr could have transferred her, presumably as an accommodation, but chose to transfer Jones instead. (*Id.*)

In addition, Young was required to sit in an "unaccommodated location" which did not have a working computer, had locked cabinets, and a one-armed chair. (*Id.* at ¶¶ 27, 35.) According to Young, her requests regarding her unaccommodated workstation were rejected by Carr. (*Id.*) Young states that this was discrimination due to her disability and her need to go to the doctor.[6] Following her requests, Young submitted a reassignment request with the EO office.[7] Young argues that she should have received comparable working technology. (*Id.* ¶ 50.) On February 22, 2018, Young states that she had to ask again for keys to the cubicle cabinets of the "non-work-ready cubicle." (*Id.* ¶ 66.)

---

[6] Young cites to an Exhibit D18. After reviewing the exhibits found in ECF No. 22 that Young incorporates by reference into her amended complaint, there is no exhibit clearly marked D18.

[7] Young cites to an Exhibit D19. Again, after reviewing the exhibits incorporated by reference into the amended complaint, there is no exhibit marked D19.

Young goes on to allege that "the Defense knowingly deceived or willfully obstructed [Young] from competing for employment." (*Id.* ¶ 29.) Young contends that she applied for multiple jobs, for which she was qualified, including human resource assistant (recruitment and placement), human resource assistant (information system), and voluntary relocation program. (*Id.*)

Young engaged in an internal mediation, which ended on March 6, 2018. (*Id.* at ¶ 37.) On March 6, 2018, the internal EO counselor notified the parties that the mediation had closed. (*Id.* ¶ 68.) Young also alleges that Seawood retaliated against her for her EO participation by "demanding that [Young] provide [Seawood] with [Young's] badge number" on the same day. (*Id.* ¶¶ 38, 69.) The next day, Young states that she was required to clean out her cubicle. (*Id.* ¶ 39.) Subsequently, over the next several days, Young was "progressive[ly] asked for more information." (*Id.* ¶ 40.)

Young further alleges that on March 12, 2018, she returned to work from the weekend and was terminated by Yarbrough and asked for her badge. (*Id.* ¶¶ 41, 70.) Young's letter of termination states that she was terminated due to two write-ups. (*Id.* ¶ 42.) Young states that the write-up dated January 2018 pertained to a reasonable accommodation request. (*Id.* ¶¶ 32, 43.) The second write-up was dated February 22, 2018, and allegedly pertained to a response to an earlier email sent by Young to Yarbrough and Carr

8

requesting an update on the state of her requested items for her cubicle. (*Id.* ¶ 44.) Young additionally cites to 5 C.F.R. § 315.803(b) to support her argument that she was entitled to a reasonable time for filing a written answer to her termination. (*Id.* ¶ 53.) Young further contends that "[she] cannot be terminated due to the failures of management." (*Id.* ¶ 63.)

Young also makes an allegation against a team manager, Sirina Wilkins ("Wilkins"), which apparently relates to Young's February 22, 2018 write-up. (*Id.* ¶ 65.) According to Young, Wilkins never informed her of any filings that needed to be done. (*Id.*) Young states that she sent several emails to Wilkins regarding the filings. (*Id.*) On February 21, 2018, Young spoke with Wilkins and, according to Young, Wilkins confirmed that there were no filings to be done. (*Id.*) However, Young contends that she was terminated for lack of filing. (*Id.*)

Young also contends that Yarbrough retaliated against her by writing her up for "non-completion of filing by [Wilkins]." (*Id.* 66.). Young cites to Exhibits D7, D7A, and D7B to prove that she attempted to meet with Wilkins on several occasions prior to the write-up on February 22, 2018. (*Id.*) However, after reviewing the exhibits Young incorporates by reference into her amended complaint, there is only an Exhibit 7. (Ex. 7, ECF No. 22-6.) Exhibit 7, however, regards Young's computer at presumably her "non-work-ready" station and does not demonstrate she attempted

9

reaching Wilkins prior to being written up. (*Id.*) Exhibits 11 and 11a, however, do pertain to Wilkins. Exhibit 11a shows that Young emailed Wilkins on February 7, 2018 stating that she stopped by Wilkins office on two occasions and Wilkins was not present. (Ex. 11a, ECF No. 22-13.) Exhibit 11 is an email from Young to Wilkins dated February 22, 2018. It states that Young is sending this email as a follow-up to a previous conversation in which Young states Wilkins showed her that there were no files and that she did not have anything for Young to file. (Ex. 11, ECF No. 22-12.)

Young further argues that both Yarbrough and Seawood were in their management positions illegally "because in [the] federal government no one can obtain multiple details/temporary assignments in one year without returning to their original position for one year after which, a second detail can be obtained." (*Id.* ¶ 64.) Young cites to 5 C.F.R. § 335.103. (*Id.*) Young contends that, as a result, "any and all write-ups that [she] received from [Yarbrough and Seawood] as well as any and all influence [they may have had in her termination] is invalid." (*Id.*)

Young contends she was "retaliated against for reporting retaliatory events against her through several protected channels including internal complaint hotlines which results in [] constant harassment, insufficient technology, verbal harassment, and termination." (*Id.* ¶ 51.)

According to Young, her employment was covered by a collective bargaining agreement which guaranteed her permanent seasonal employment from January to August 2018. (*Id.* ¶ 55.) Young alleges the Agency is in breach of this collective bargaining agreement by terminating her. (*Id.* ¶ 56.) Young also contends she did not receive a "Critical Job Evaluation checklist" from management, which she contends results in "any and all conduct and/or performance issues were the result of management's improper procedures." (*Id.* ¶ 58.) Young explains that within the Agency, performance is measured in the form of evaluations and she never received her annual evaluation which was due in January 2018 and never received any training from the management team. (*Id.* ¶ 54.)

Young alleges she included the lack of reasonable accommodations, her sexual harassment, disability discrimination, and marital status discrimination claims in her EO claim. (*Id.* ¶¶ 36, 60.)

Lastly, Young states that the Tennessee Department of Labor and Workforce Development found in its March 2018 decision that Young's termination was the result of requests for reasonable accommodations and retaliation for her EO complaints. (*Id.* ¶ 46.)

As relief, Young asks: (1) that the Agency be found as discriminatory; (2) the Agency's decision to terminate be overturned "due to lack of staff authority;" (3) the Agency "be found guilty of EEO MD-110;" (4) that she be reinstated

immediately; (5) that she be awarded back pay, medical benefits, a restoration of retroactive retirement contribution with interest, and that the "Agency match [what] Young would have earned [from] March 13, 2018 to the present date;" (6) that Young be "awarded all financial damages as contained in [the] Financial Ledger registered under seal by the court with additional financial damages assessed due to time transpired to the conclusion of this case;" (7) that Young be transferred to a different department or a different team and different management upon return to work; and (8) any other such relief as may be just and proper. (*Id.* § IV.)

## II.  PROPOSED CONCLUSIONS OF LAW

### A.  Legal Standard

To survive a Rule 12(b)(6) dismissal following the United States Supreme Court's opinions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a complaint must "'contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.'" *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009)(quoting *Iqbal*, 556 U.S. at 678).  The court "construes the complaint in a light most favorable to [the] plaintiff" and "accepts all factual allegations as true" to determine whether they plausibly suggest an entitlement to relief. *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012).  However, "pleadings that . . . are no more than conclusions[] are not

12

entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3. ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief.  Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice of the nature of the claim, but also 'grounds' on which the claim rests.").

The Supreme Court's decision in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002), makes clear that Title VII plaintiffs are not required to plead the elements of a *prima facie* case under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See also Morgan v. St. Francis Hosp.*, 2019 WL 5432041, at * 1-2 (6th Cir. Oct. 3, 2019)(applying the same standard from *Swierkiewicz* to a claim under the ADA).  All that is required is that the complaint satisfies Rule 8(a)'s simplified pleading standard. *Swierkiewicz*, 534 U.S. at 513.  Federal Rule of Civil Procedure 8(a) provides in relevant part that a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "But where the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'

– 'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at
679 (quoting Fed. R. Civ. P. 8(a)(2)).

"*Pro se* complaints are to be held to 'less stringent standards
than formal pleadings drafted by lawyers,' and should therefore be
liberally construed." *Williams v. Curtin*, 631 F.3d 380, 383 (6th
Cir. 2011)(quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir.
2004).  *Pro se* litigants, however, are not exempt from the
requirements of the Federal Rules of Civil Procedure. *Wells v.
Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v.
Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011)("[A] court cannot
create a claim which [a plaintiff] has not spelled out in his
pleading.")(internal quotation marks omitted); *Payne v. Sec'y of
Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003)(affirming *sua sponte*
dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and
stating, "[n]either this court not the district court is required
to create Payne's claim for her"); *cf. Plier v. Ford*, 542 U.S.
225, 231 (2004)("District judges have no obligation to act as
counsel or paralegal to pro se litigants."); *Young Bok Song v.
Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011)("[W]e decline to
affirmatively require courts to ferret out the strongest cause of
action on behalf of pro se litigants.  Not only would that duty be
overly burdensome, it would transform the courts from neutral
arbiters of disputes into advocates for a particular party.  While
courts are properly charged with protecting the rights of all who

come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

B.    Dismissal for Failure to Exhaust Administrative Remedies

In its motion for partial dismissal, the Defendants' first argument is that certain claims of Young's should be dismissed for failure to exhaust administrative remedies. (Mot. to Dismiss, ECF No. 113.)  Both Title VII and the Rehabilitation Act contain a charge-filing requirement before filing suit in federal court. *See Lockett v. Potter*, 259 F. App'x 784, 786 (6th Cir. 2008)(explaining the administrative requirements for a federal employee under Title VII); *Smith v. United States Postal Service*, 742 F.2d 257, 262 (6th Cir. 1984)(explaining that a federal employee is required to exhaust administrative remedies before filing suit pursuant the Rehabilitation Act).

The Supreme Court in *Fort Bend County v. Davis* held that "Title VII's charge-filing requirement is a processing rule, albeit a mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of courts." 139 S. Ct. 1843, 1851 (2019).  "A claim processing rule may be 'mandatory' in the sense that a court must enforce the rule if a party 'properly raise[s]' it. *Id.* at 1849; *see also Lee v. Esper*, 2019 WL 7403969, at *2 (D.S.C. Aug. 13, 2019)(applying *Fort Bend County* to a federal employee's discrimination claim); *Williams v. Wolf*, 2019 WL 6311381, at *6 (N.D. Cal. Nov. 25, 2019)(applying *Fort Bend County*

15

to a claim under the Rehabilitation Act).  In Young's case, the Defendants have timely asserted that she has not exhausted her administrative remedies for certain claims, and as such, those claims should be dismissed.

> Administrative requirements for a federal employee include:
>
> [C]onsultation with an EEO counselor within forty-five days of the allegedly discriminatory incident, 29 C.F.R. § 1614.105(a)(1); filing an individual complaint of discrimination with the allegedly discriminatory agency, 29 C.F.R. § 1614.106(a); and receipt of a final agency decision, 29 C.F.R. § 1614.110(a).  The employee may file a discretionary appeal of an agency's final action to the Equal Employment Opportunity Commission ("EEOC") within thirty days of final agency action.  29 C.F.R. § 1614.402(a).  Within ninety days of receiving notice of the final agency action or the EEOC decision, or within 180 days of filing the initial complaint with the agency or the appeal with the EEOC, the employee can file civil suit in a U.S. District Court.  29 C.F.R. § 1614.407(a)-(d).

*Locket v. Potter*, 259 F. App'x 784, 786 (6th Cir. 2008); *see also Ryan v. McDonald*, 191 F. Supp. 3d 729, 740 (N.D. Ohio 2016)(explaining that the Rehabilitation Act adopted the same administrative remedies and exhaustion requirements as Title VII).

The Defendants' assert that Young did not exhaust her administrative remedies as to certain claims.  To support their claims, the Defendants attached copies of Young's EO counseling documents, EEO formal complaints, EEOC decisions, Agency decisions, and other relevant documents involved in Young's EEO process.  (Defs.' Exs., ECF No. 113-1.)  Generally, a court may only consider the pleadings in deciding a Rule 12(b) motion to

16

dismiss, requiring the court to convert the motion into a summary judgment motion under Rule 56 if it considers matters outside of the pleading. *See Kostrzewa v. City of Troy*, 247 F.3d 633, 643-44 (6th Cir. 2001). However, "[i]t is well established that a court may consider public records and facts susceptible to judicial notice without converting a motion to dismiss into one for summary judgment." *Russell v. Tribley*, 2011 WL 4387589, at *3 (E.D. Mich. Aug. 10, 2011)(citing *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 n.1 (10th Cir. 2004); *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003); *Menominee Indian Tribe of Wis. v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998)); *see also Brown v. Donahoe*, 2014 WL 652277, at *4 (W.D. Tenn. Feb. 19, 2014)(adopting magistrate judge's decision that EEOC documents attached to the motion to dismiss were central to the claims and were public records and citing to *Kovac v. Superior Dairy, Inc.*, 930 F. Supp. 2d 857, 862-63 (N.D. Ohio 2013)). Young refers to her EEO counseling, her EEO complaints, and various other portions of her EEO process in her amended complaint. Accordingly, the court finds that the EEOC documents attached to the Defendants' motion to dismiss are central to her claims. Therefore, the court may consider these exhibits and will not convert the motion to dismiss into a motion for summary judgment. According to the attached documents to the

Defendants' motion to dismiss, there were two EEO cases filed which are relevant to Young's present case.

Young initiated EEO counseling in case number IRS-18-0237 ("First EEO Case") on January 5, 2018. (Defs.' Ex. 2, ECF No. 113-1.)  In her EEO counseling, Young alleged the following: on January 2, 2018, management refused to provide her with equipment and guidance; her manager continually watched her making her feel sexually harassed; on January 29, 2018, management assigned her a cubicle in violation of her reasonable accommodation request; management did not provide her with additionally sufficient training or guidance; management wrote her up on three occasions in January and February of 2018; and on January 18, 2018, management did not respond to a Tour of Duty change request. (*Id.*) The Agency issued a Notice of Right to File a Discrimination Complaint. (Defs.' Ex. 4, ECF No. 113-1.)

On March 14, 2018, Young filed her formal complaint in her First EEO Case. (Defs.' Ex. 5, ECF No. 113-1.)  The formal complaint contained the following allegations: in January 2018, the Agency did not respond to a request for hardship transfer; in January and February 2018, Young was not selected for various positions; on March 12, 2018, the Agency terminated Young and breached a contract. (*Id.*) The Agency issued its final decision as to Young's First EEO Case on March 23, 2018, dismissing all claims because they were not raised in EEO counseling and allowing

Young to contact the counselor within 15 days if she wanted to pursue those claims. (Defs.' Ex. 3, ECF No. 113-1.) Young appealed this decision to the EEOC in appeal number 0120181526.

On March 29, 2018, Young again initiated EEO counseling in case number IRS-18-0410 ("Second EEO Case"). (Defs.' Ex. 6, ECF No. 113-1.) In EEO counseling, Young brought the following allegations: in January 2018, the Agency did not respond to request for hardship transfer; in January and February 2018, she was not selected for various positions; on March 12, 2018, the Agency terminated her and breach a contract; in January 2018 she was denied a reasonable accommodation with respect to cubicle assignment; in January 2018, she was not provided with appropriate training and equipment; she was written up in January and February 2018; and she was not provided an annual evaluation and critical job elements due in January 2018. (*Id.*) On May 30, 2018, the Agency issued Young a Notice of Right to File a Discrimination Complaint. (Defs.' Ex. 7, ECF No. 113-1.)

Young subsequently filed her EEO formal complaint in her Second EEO Case on July 12, 2018 alleging: she was terminated on March 12, 2018; she was assigned a cubicle that did not accommodate her disabilities; she was written up in January and February 2018; she was subjected to verbal harassment; she was not provided an annual evaluation and critical job elements due in January 2018; she did not receive appropriate training and equipment; she did

not receive advance written notice of termination and opportunity to respond; and she was not selected for various positions. (Defs.' Exs. 8, 9, ECF No. 113-1.)

On July 10, 2018, the Agency issued an acceptance and partial dismissal letter. (Defs.' Ex. 10, ECF No. 113-1.) On August 15, 2018, the EEOC issued its decision in appeal number 0120181526. (Defs.' Ex. 11, ECF No. 113-1.) The EEOC reversed dismissal of Young's claim that she was subjected to discrimination on the basis of her disability and reprisal when management denied her request for a hardship transfer. (*Id.*) The EEOC did, however, affirm dismissal of Young's claims that she was discriminated against and subjected to reprisal when on March 12, 2018, the Agency terminated her and breached a contract. (*Id.*)

The Agency issued its revised acceptance and partial dismissal letter on August 28, 2018. (Defs.' Ex. 12, ECF No. 113-1.) The Agency dismissed Young's claims which were pending on appeal of the decision in Young's First EEO Case before the EEOC in appeal number 0120181526. (*Id.*) The Agency accepted for investigation, Young's claims that: she was terminated on March 12, 2018; she was not selected for certain positions; and she was not transferred to nightshift after the EEOC's reversed dismissal of claim in IRS-18-0237. (*Id.*) The Agency dismissed all other remaining claims.

Young requested that the EEOC reconsider its August 15, 2018 decision. (Defs.' Ex. 14, ECF No. 113-1.)  On March 8, 2019, the EEOC denied Young's request for reconsideration. (*Id.*)  Young subsequently filed this action on June 11, 2019. (Compl., ECF No. 1.)  Young's amended complaint contains the following allegations that she was discriminated against on the basis of her disability and/or that she was subjected to retaliation when: (1) she was denied a transfer to the night shift; (2) she was not selected for various positions; (3) she was terminated on March 12, 2018; (3) in January 2018, she was forced to sit in a non-work ready cubicle that did not accommodate her disabilities; (4) she was written up in January and February 2018; (5) she did not receive an annual evaluation and a critical job evaluation checklist that were due in January 2018; (6) she was verbally harassed; (7) she was sexually harassed by a manager; (8) she was not provided with any training from management; (9) she was not provided with advance written notice of her termination or an opportunity to respond; and (10) two of her managers were in their positions illegally such that the write-ups Young received, and the subsequent termination, were invalid. (Am. Compl. ¶¶ 25, 27-29, 30, 34-36, 41, 43, 51, 53-54, 57-58, 60, 64, 66.)

     1. *Claims Contained in Amended Complaint and EEO Counseling but Not Contained in EEO Formal Complaint*

The Defendants first assert that the following claims were contained in Young's amended complaint and were raised during her EEO counseling in Young's First EEO Case, but were not included in Young's formal complaint in her First EEO Case:

> [Young's] allegations that she was discriminated against on the basis of disability and/or that she was subjected to retaliation for engaging in prior protected activity when: [1] in January 2018, she was forced to sit in a non-work ready cubicle that did not accommodate her disabilities []; [2] she was written up in January and February 2018 []; [3] she was sexually harassed by a manager []; and [4] she was not provided with any training from management [].

(Mot. to Dismiss 11, ECF No. 113.)

As explained above, there are certain administrative requirements an employee must comply with to have exhausted his or her administrative remedies before filing suit in federal court. *Wilson v. Donahoe*, 2014 WL 12759771, at *3 (S.D. Ohio Oct. 27, 2014). One such requirement is the formal complaint. "The employee . . . must file his formal complaint with the agency's EEO Office within 15 days of receiving his Notice of Right to File." *Id.* (citing 29 C.F.R. § 1614.105(a)). Furthermore, courts have generally held that a plaintiff may not rely on the EEO counseling report to establish that he or she exhausted a claim. *See, e.g.*, *Hamilton v. Geithner*, 666 F.3d 1344, 1350 (D.C. Cir. 2012); *Youssef v. Holder*, 881 F. Supp. 2d 93, 101 (D.C. 2012)(explaining that a formal complaint is an independent prerequisite to exhaustion); *Figueroa v. United States Postal*

22

*Service*, 422 F. Supp. 2d 866, 880 (N.D. Ohio, 2006)(explaining that the plaintiff did not exhaust her administrative remedies where she failed to file a formal complaint based on the allegations in her informal one).

The record reflects that Young's allegations that the Agency discriminated against her on the basis of disability and/or that she was subjected to retaliation when in January 2018, she was forced to sit in a non-work ready cubicle that did not accommodate her disabilities; she was written up in January and February 2018; she was sexually harassed by a manager; and she was not provided with any training from management were contained in her EEO counseling commenced on January 5, 2018. In her formal complaint, however, she only included three claims, none of which are the claims previously discussed. Considering Young's claim that she was sexually harassed by a manger appears only in her EEO counseling report in her First EEO Case and nowhere else until her amended complaint, Young failed to exhaust her administrative remedies in regard to that claim. Accordingly, it is recommended that Young's claim that she was sexually harassed by management be dismissed.

As to Young's claims that in January 2018, she was forced to sit in a non-work ready cubicle that did not accommodate her disabilities; she was written up in January and February 2018; and she was not provided with any training from management, the issue

is different.  These claims were not included in the formal complaint in Young's First EEO Case; however, each claim appears in Young's EEO counseling report and formal complaint in her Second EEO Case.  The Defendants argue that because Young did not raise these issues in the formal complaint in Young's First EEO Case, they are waived.

Although not binding authority, the EEOC's decisions and regulations are persuasive.  *See, e.g.*, *Nichols v. Muskingum College*, 318 F.3d 674, 680 (6th Cir. 2003)(deferring to the EEOC's interpretations); *Brown v. Am. Enka Corp.*, 452 F. Supp. 154, 158 (E.D. Tenn. 1976)(explaining that the EEOC's decisions are entitled to deference).  "The Commission has long held that where a Complainant raises a matter at counseling but later does not include that issue in the formal complaint, he/she cannot resurrect it later during processing or file another complaint concerning the abandoned claim." *Beer v. Donahoe*, 2012 WL 523976, at *2 (EEOC Feb. 9, 2012); *see also Cahill v. United States Postal Serv.*, 2011 WL 4889397, (EEOC Oct. 7, 2011); *Small v. United States Postal Serv.*, 1999 WL 589571 (EEOC July 16, 1999); *Robinson v. Peace Corps.*, 1995 WL 264710 (EEOC May 2, 1995).  Accordingly, Young failed to exhaust her administrative remedies with respect to the claims she included in the EEO counseling in her First EEO Case but not in her formal complaint, and it is therefore recommended that those claims be dismissed.

   2. *Claims Contained in EEO Formal Complaint but Not
      Contained in EEO Counseling*

     The Defendants also assert that certain claims were contained
in Young's EEO formal complaints, but were not raised during
Young's EEO counselings, and therefore should be dismissed.  Those
claims include when Young was verbally harassed and when she was
not provided with advance written notice of her termination or an
opportunity to provide a response.  (Mot. to Dismiss 12, ECF No.
113.)

     EEOC regulations require federal employees who believe they
have been discriminated against to consult an EEO counselor prior
to filing a complaint.  *Johnson v. Cohen*, 6 F. App'x 308, 311 (6th
Cir. 2001)(citations omitted).  "Timely contact with an EEO
counselor is an administrative remedy that a federal employee must
invoke before he may bring a claim of employment discrimination in
federal district court."  *Horton v. Potter*, 369 F.3d 906, 910 (6th
Cir. 2004)(citing *Benford v. Frank*, 943 F.2d 609, 612 (6th Cir.
1991)).  "Failure to timely seek EEO counseling is grounds for
dismissal of the discrimination claims." *Hunter v. Sec'y of United
States Army*, 565 F.3d 986, 993 (6th Cir. 2009)(citing *Benford*, 943
F.2d at 612)).

     The record shows that Young's claims that she was
discriminated against on the basis of disability and/or subjected
to retaliation when she was verbally harassed and when she was not

provided with advanced written notice of her termination or an opportunity to provide a response were only included in her EEO complaints and were not first raised with an EEO counselor. Because Young failed to timely seek EEO counseling in regard to these specific claims, she failed to exhaust her administrative remedies. Accordingly, it is recommended that those claims be dismissed.

3. *Claim for Not Receiving Annual Evaluation and Critical Job Evaluation Checklist*

The Defendants also contend that Young's allegation that she was discriminated against on the basis of her disability and/or retaliated against when she did not receive an annual evaluation and critical job evaluation checklist in January 2018 should be dismissed. (Mot. to Dismiss 12-13, ECF No. 113.) Specifically, the Defendants argue Young did not contact an EEO counselor as to this claim within the forty-five-day timeline and as such, the claim should be dismissed.

As stated above, "[f]ailure to contact an EEO counselor within 45 days of an employment action is grounds for dismissal of a complaint." *Lord*, 568 F. App'x at 437 (citing *Hunter*, 565 F.3d at 993). Young alleges that she should have received her annual evaluation and her critical job elements by January 31, 2018. Young had forty-five days – until March 17, 2018 – to contact an EEO counselor regarding her claim. Young, however, raised this

claim in her Second EEO Case, which she initiated on March 29, 2018. As such, Young failed to contact an EEO counselor within the forty-five days of the employment action, which is grounds for dismissal. Accordingly, it is recommended that Young's claim that she was discriminated against on the basis of her disability and/or retaliated against when she did not receive an annual evaluation and critical job evaluation checklist in January 2018 be dismissed.

4. *Young's Response*

To begin, Young seems to suggest in her response that the Defendants are arguing that Young failed to file any formal complaints or raise any claims in EEO counseling. The Defendants do not argue this; rather, the Defendants argue that Young failed to exhaust her administrative remedies as to these specific claims. "Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Shorter v. Memphis Light, Gas & Water Co.*, 252 F. Supp. 2d 611, 623 (W.D. Tenn. 2003); *see also More v. Snow*, 480 F. Supp. 2d 257, 270 (D.D.C. 2007)(citing to *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) to support the proposition that a plaintiff must exhaust all administrative remedies for each 'discrete' incident of discrimination or retaliation).

Young also points to her Right to Sue letter as evidence that she has exhausted her administrative remedies, stating that it

27

"PROVES that all administrative remedies, including mediation[,] have been . . . exhausted by [Young]." (*Id.*) Receiving a right to sue letter, however, does not demonstrate that all administrative remedies have been exhausted and does not cure untimeliness. *Kilgore v. Brennan*, 2016 WL 11479288, at *4 (W.D. Tenn. July 18, 2016)(relying on *Dobbins v. Lew*, 2014 WL 7048963, at *3 (N.D. Ohio Dec. 11, 2014)).

Young also states that "[t]he Commission has held that a complainant may allege discrimination on all applicable bases and may amend his or her complaint at any time to add or delete bases without changing the identity of the claim."[8] (*Id.*) The holding of that Commission decision, however, regards situations in which a plaintiff has amended their original EEO complaint. That is not the case here. Young did not amend her formal complaints. Rather, she filed two separate EEO counseling reports, exhausting some of her claims but not others. Young also generally concludes that each of her claims "are clearly shown in each and every EO internal [and] external [document]" and that there were not boxes for some of her claims. (*Id.* at 17.) This conclusory statement, however, does not demonstrate that she exhausted her remedies as to each claim.

---

[8] Young cites to *Complainant v. United States Postal Service*, EEOC Request No. 05940563 (Jan. 19, 1995). This case may be accessed by going to https://www.eeoc.gov/federal/reports/dismissals.cfm.

Furthermore, although Young cites to several exhibits in her response, (Pl.'s Ex. D, E, F, I, and J; ECF No. 161-1), none of these exhibits demonstrate that she exhausted her remedies for each of these claims.  The exhibits do not demonstrate that she raised all claims with the EEO counselor in her First EEO Case or that she included all claims in her formal complaint in her First EEO Case which were raised with the EEO counselor.  Additionally, exhibits D, I, and J are all dated prior to the Agency issuing Young her Notice of Right to File a Discrimination Complaint. (Pl.'s Exs. D, I, and J, ECF Nos. 161-1.)  Even if the court considered the claims in Young's exhibits as being properly raised before the EEO counselor, Young still failed to exhaust her administrative remedies because these claims are not included in her formal complaint in her First EEO Case, *see supra* Part II.B.1. Exhibits E and F relate to Youngs' Second EEO Case.  The Exhibits docketed by Young are not dated; however, the Defendants' in their reply indicated that Exhibit E was sent on September 25, 2018.  At that time, counseling in Young's Second EEO Case was complete, and as such, Young again failed to exhaust her administrative remedies, *see supra* Part II.B.2.

Additionally, Young cites to Exhibit D to support that her claim that she should have received an evaluation and her critical job elements by January 31, 2018 was included within the "Terms/Conditions of Employment," which she checked on her

counseling form in her first EEO case.  This argument, however, is unavailing.  Even had this vague assertion been sufficient to include Young's claim regarding her job evaluation, it would still not be sufficient to demonstrate that Young exhausted her administrative remedies.  This claim was still not asserted in the formal complaint, *see supra* Part II.B.3.

The above arguments provided by Young in her response are unavailing.  Accordingly, for the reasons stated above, it is recommended that the Defendants' motion for partial dismissal be granted as to these claims.

C.    <u>Dismissal for Lack of Standing to Challenge Position of Managers</u>

Young cites to 5 C.F.R. § 335.103 to support her proposition that Yarbrough and Seawood lacked authority.[9]  The Defendants argue that Young lacks standing to challenge Yarbrough's and Seawood's authority pursuant to 5 C.F.R. § 335.103, and in the alternative, Young failed to exhaust her administrative remedies as to this claim.  (Mot. to Dismiss 13, ECF No. 113.)  Young contends that the Defendants' argument is "absolutely incorrect."  (Resp. 19, ECF No. 161.)  Young makes conclusory assertions that "[e]ach and every employee possess standing to challenge the authority of his

_____

[9] Notably, Young appears to contend that the Defendants citation to 5 C.F.R. § 335.103, is incorrect, (Resp. 19, ECF No. 161), although Young herself is the one who cites to this provision to support her argument.

[or] her manager[]" and that she has "dutifully proven that she consulted with EEO counselors and filed a formal complaint of discrimination with the [A]gency which ensures that the issues regarding illegal placement of staff are added to this case." (*Id.*)

Section 335.103 is titled "Agency promotion programs" and governs how an agency is to make promotions under § 335.102. 5 C.F.R. § 335.103(a). Additionally, § 355.103(d) provides employees with a right to file a complaint relating to a promotion action pursuant to the standards set forth in part 300, subpart A. 5 C.F.R. § 335.103(d). Section 300.104(c) provides those standards, stating in relevant part that "an employee may file a grievance with an agency when he or she believes that an employment practice which was applied to him or her and which is administered or required by the agency violates the basic requirement in § 300.103. The grievance shall be filed and processed under an agency grievance system, if applicable, or a negotiated grievance system as applicable." 5 C.F.R. § 300.104(c).

When an individual has standing to file suit pursuant to § 355.104 is relatively unanswered by courts. The Defendants cite to *Dow v. General Services Administration*, 590 F.3d 1338, 1342 (F. Cir. 2010), which held that the Merits Selection Board had jurisdiction over a plaintiff's claim pursuant to 5 C.F.R. § 300.104 if there was: (1) an employment practice and (2) the

31

practice was applied to the plaintiff.  Here, Young does not allege
that any "employment practice" was "applied to" her.  Young fails
to allege any facts which demonstrate a claim, let alone facts
which demonstrate standing, pursuant to § 355.103(d).

In the alternative, the record shows that Young never raised
this claim with an EEO counselor and did not include it in her
formal complaint, for the reasons states above in Part II.B., Young
failed to exhaust her administrative remedies.  Accordingly, it is
recommended that Young's claim that Yarbrough and Seawood lacked
authority pursuant to 5 C.F.R. § 335.103 be dismissed.

D.    Dismissal as to Improper Defendants

Finally, the Defendants argue that the only proper defendant
in this case is the Secretary of the Treasury and thus, the IRS
and the Department of the Treasury should be dismissed as
defendants.  (Mot. to Dismiss 14-15, ECF No. 113.)  Young vaguely
discusses individual liability under federal discrimination
statutes citing to a California Supreme Court case and the
definition of employer under the Fair Labor Standards Act as well
as baldly asserts that the Defendants are incorrect.  (Resp. 1-2,
19, ECF No. 161.)

The Sixth Circuit held that the Secretary of the Treasury is
the only proper defendant in terms of Title VII actions brought by
a federal employee.  *Hancock v. Egger*, 848 F.2d 87, 87-89 (6th
Cir. 1988).  As the court in *Hancock v. Egger* explained, § 2000e-

32

16(c) of Title 42 "mandates who may be a proper defendant in civil actions brought by federal employees to enforce rights under Title VII." *Id.*; see also *Ferguson v. Paulson*, 2008 WL 11388395, at *2 (M.D. Tenn. July 28, 2008)(citing to *Hancock*, 848 F.2d at 89; *Mulhall v. Ashcroft*, 287 F.3d 543, 550 (6th Cir. 2002)(holding that Attorney General, not the FBI, was proper defendant for federal employee's Title VII claim). Section 2000e-16(c) provides that "the head of the department, agency, or unit, as appropriate shall be the defendant." 42 U.S.C. 2000e-16(c). While the Sixth Circuit has not explicitly ruled on this issue as to claims under the Rehabilitation Act, several district courts within the Sixth Circuit have concluded that the head of a federal agency or department is the proper defendant in a Rehabilitation Act action. *See e.g.*, *Klein v. United* States, 2015 WL 6736114, at *5 (S.D. Ohio Nov. 4, 2015); *McGhee v. United States Postal Service*, 2006 WL 1851261, at *2 (E.D. Mich. June 30, 2006)(citing *Honeycutt v. Long*, 861 F.2d 1346, 1349 (5th Cir. 1988); *Romain v. Shear*, 799 F.2d 1416, 1418 (9th Cir. 1986); *Ellis v. United States Postal Service*, 794 F.2d 835, 838 (7th Cir. 1986)); *Delaney v. Potter*, 2006 WL 246930, at *3 n.3 (M.D. Tenn. Aug. 24, 2006).

As such, neither the IRS nor the Department of Treasury are the proper defendant. The only proper defendant is "the head of the department, agency, or unit." Accordingly, only Stephen T. Mnuchin as the Secretary of the Treasury is the proper defendant.

Therefore, it is recommended that the Defendants' motion to dismiss the IRS and the Department of Treasury as defendants be granted.

### III. RECOMMENDATION

For the following reasons, it is recommended that the Defendants' motion for partial dismissal be granted.

Respectfully submitted this 9th day of April 2020.

s/Diane K. Vescovo
DIANE K. VESCOVO
CHIEF UNITED STATES MAGISTRATE JUDGE

### NOTICE

Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.